STATE ex rel WALLACE B. DOUGLAS v. SCHOOL DISTRICT NO. 108
and Others.[1]

January 17, 1902.

Nos. 12,759—(160).

## Quo Warranto—Discretion of Court.

A quo warranto proceeding is a subject for the exercise of sound judicial discretion. It is proper for a court to consider the circumstances of the case, the position and motives of the relator in having the proceedings instituted, and the necessity and policy of allowing the remedy.

## Existence of Corporation—Estoppel against the State.

Where the right of a corporation to assert its corporate existence is questioned by a state because of some defect or irregularity in the proceedings for organization, the doctrine of waiver operating by way of estoppel in pais is applicable as against the state. Its conduct may have been such as to constitute a declaration that a forfeiture of corporate rights will not be insisted upon, and that the right to declare such forfeiture is waived.

## Loan by State to Respondent.

This rule applied where, after its organization in form, and prior to the institution of quo warranto proceedings, a school district had borrowed money from the state, to be and which was actually used in the erection of a school building, had issued its bonds therefor to such state, and had voted a tax for current expenses.

Proceeding in the nature of quo warranto in the district court for Dakota county, on the relation of the attorney general, to oust and deprive respondents, School District No. 108 and the treasurer, director and clerk thereof, of all corporate rights, powers, and franchises. From a judgment discharging a writ, entered pursuant to an order of Crosby, J., relator appealed. Affirmed.

*Wallace B. Douglas*, Attorney General, *John D. O'Brien* and *J. M. Millett*, for appellant.

*Wm. Hodgson* and *Stringer & Seymour*, for respondents.

[1] Reported in 88 N. W. 751.

COLLINS, J.

This is a quo warranto proceeding to inquire into the organization of School District No. 108, in the county of Dakota.

The district was organized, if at all, under Laws 1891, c. 26 (G. S. 1894, §§ 3667–3672, inclusive), in the year 1900; and a number of reasons are assigned by counsel for the relator why it has never had a legal existence, and should be so declared in this proceeding. The court below found the facts quite fully in respect to the details of the organization, and that in September, 1900, officers of said district were elected, were duly qualified, entered upon and continue to discharge their official duties. The court also found that after such election, and prior to the commencement of this proceeding, said district duly made an application for a loan of money from the state, under G. S. 1894, § 3769, et seq.,—the same to be used in the erection of a school building in the district,—and, further, that

"Such proceedings were had and taken by the proper officers of the state of Minnesota, that prior to the commencement of this action said application was granted, and said school district duly issued to the state of Minnesota its bonds in the sum of $600, which were accepted by the state of Minnesota, and the sum of $600 paid by it to said school district, which has been used in the construction of a school building in said school district,"

and that the district subsequently voted a tax for current expenses, which presumably has been levied and is in process of collection. Upon these findings the trial court ordered judgment for the respondents, and from the judgment the relator appealed.

Counsel for respondents take the position: (a) That the order based upon the conclusion and determination of the county commissioners to create said school district was final and conclusive, and cannot be reviewed by a court by means of quo warranto; (b) that the state is estopped by its acts of commission and omission, as found below, from questioning the validity of the organization of said school district.

At the time the board of county commissioners acted upon the petition presented for the organization of this new district, it was provided in section 3669 that "the decision of the said board when so recorded shall be final"; and it is upon this language that the

respondents' counsel rest their claim that the order of the board cannot be reviewed by a court under the writ of quo warranto, even if the board was without jurisdiction to act upon the petition because the statute had not been complied with in several essentials. We do not find it necessary to pass upon this contention, for we are clearly of the opinion that the state has fully recognized the existence of this school district, and has thereby waived its right to question the validity of its organization in this proceeding. It has, according to the findings, treated and dealt with it as a lawfully organized district; has loaned it money to be used in the erection and construction of a school building, which building has been completed; and has accepted its bonds in the sum of $600 on account of the loan. By its action the district itself is estopped to deny its legal existence, for in an action brought by the state to enforce the collection of these bonds the taxpayers of the district would not be permitted to urge that it was not lawfully organized. If this be so, it seems plain that the rights of the state and of the district must be reciprocal, and that the former has precluded itself from asserting that the district was not duly organized.

Estoppels of every kind are mutual. If the state should succeed in having the purported organization of the district adjudged void, the people therein would be deprived of the benefits of a new district, compelled by the doctrine of estoppel to meet and pay bonds, and at the same time obliged to bear their share of the debts and expenses of the original school districts from which they sought separation. This would be exceedingly unjust, and a writ of quo warranto should never be issued to bring about such an inequitable result.

The writ was invoked in this case in the interests of the public, only, and for public purposes. The proceeding was not instituted in behalf of private persons,—for instance, a taxpayer. It is within the discretion of a court of equity to exercise its power over these proceedings in such a manner as best promotes public interests, for the remedy asked for here is not a matter of absolute right to the relator. A proceeding by information in the nature of quo warranto is a subject for the exercise of a sound judicial

discretion. It is proper for this court, in the exercise of its discretion, to consider all the circumstances of the case, the position and motives of the relator in having the proceeding instituted, and the necessity and policy of allowing the remedy    People v. Schnepp, 179 Ill. 305, 53 N. E. 632; People v. Gartland, 75 Mich. 143, 42 N. W. 687. The state should not be allowed to place itself in an awkward or unenviable position through a quo warranto proceeding. It was in its power to waive its right to inquire into the regularity of the district organization, and it did so very effectually when it received and acted upon the application to accept district bonds, and paid the money over with which a school building was erected. On the strength of this action the district incurred indebtedness which has not been paid, which is still a liability upon it, and from which it cannot escape.

The rule is that in quo warranto proceedings instituted by a state the doctrine of waiver, operating by way of estoppel in pais, may be appealed to and applied as a defense, although, in strictness, the term "waiver" is used to designate the act, or the consequences of the act, of one party only, while the term "estoppel in pais" is applicable where the conduct of one party has induced another to take such a position that he will be injured if the first be permitted to repudiate his act. In cases where the right of a corporation to assert its corporate existence has been questioned because of some defect or irregularity in the proceedings for organization, it has frequently been held that the doctrine of estoppel is applicable, where there have been acts on the part of the state which in terms amount to a waiver. The conduct of a state may be such as to constitute a declaration that a forfeiture of corporate rights will not be insisted upon, and that the right to declare such forfeiture is waived.

The authorities upon this are abundant. Attorney General v. Delaware, 27 N. J. Eq. 1; Com. v. Bala, 153 Pa. St. 47, 25 Atl. 1105; Attorney General v. Petersburg, 28 N. C. 456; People v. President, 9 Wend. 351; Com. v. Andre's Heirs, 3 Pick. 224. It has been held that the United States is estopped to deny the right of a collector of revenue to the compensation provided by law. U. S. v. Collier, 3 Blatchf. 325, Fed. Cas. No. 14,833. See also St. Paul, S. & T. F.

R. Co. v. First Division St. P. & P. R. Co., 26 Minn. 31, 49 N. W. 303, in which it was held that the government is bound by its land plats. As was said in State v. Milk (C. C.) 11 Fed. 389: "Resolute good faith should characterize the conduct of states in their dealings with individuals, and there is no reason in morals or law that will exempt from the doctrine of estoppel;" a large number of cases being cited.

Our conclusion is that the judgment appealed from should be, and hereby is, affirmed.