STATE ex rel. WAH–WE–YEA–CUMIN v. S. B. OLSON and Others.[1]

February 11, 1909.

Nos. 16,090—(274).

**Quo Warranto—Application by Private Citizen.**

    Leave to institute and conduct proceedings in the nature of quo warranto to test the validity of proceedings had for the purpose of organizing municipal or quasi municipal corporations will not be granted at the suit of a private relator having no interest in the subject-matter distinct from that of the public. State v. Dahl, 69 Minn. 108, limited.

**Same—Application by Person under Indictment.**

    A person under indictment by the grand jury of a county alleged to have been defectively organized is situated differently; but his interest in the question of the legality of the county organization differs from that of the public in degree only.

Information for a writ of quo warranto directed to the members of the board of county commissioners of the county of Mahnomen which set forth the facts stated in the first paragraph of the opinion and alleged that all of the proceedings touching the creation of the county of Mahnomen were void for the reason that the territory comprising the county of Norman did not have two thousand inhabitants and that the county of Mahnomen never had to exceed eleven hundred inhabitants. Application denied.

*George B. Edgerton* and *John P. Coleman,* for relator.

BROWN, J.

    Relator, who is under indictment by the grand jury of Mahnomen county and soon to be tried thereon in the district court of that county, applies to this court for a writ of quo warranto for the purpose of inquiring into and having determined the validity of the proceedings had and taken for the organization of the county. The county was organized, if at all, under section 380, et seq., R. L. 1905. Relator alleges that the proceedings had therefor were not in compliance with the statutes, and illegal and void, in consequence of which the county has no legal or valid existence, and no term of the district court

[1] Reported in 119 N. W. 799.

could lawfully be convened therein; hence that the indictment against him is a nullity. He also alleges that he has applied to the attorney general, and requested that officer in his official capacity to institute the proceedings, and that he has refused to do so, and, further, that he has no other method of raising the question whether the county was legally organized, and cannot do so unless he is permitted to proceed in this manner.

We have, then, squarely presented the question whether, where the attorney general refuses to interfere, proceedings in the nature of quo warranto may be instituted in this court by a private citizen, having no interest in the subject-matter of the controversy distinct from the general public, to determine the legality of the proceedings had for the purpose of creating and organizing municipal subdivisions of the state. The question has been informally presented in other applications, and disposed of without a formal opinion. We deem it advisable at this time definitely to settle the question for guidance in the future.

The question whether proceedings may be so instituted to determine the title of a person to a public office has often been before the court in one form or another, and in Barnum v. Gilman, 27 Minn. 466, 8 N. W. 375, 38 Am. 304, the right was denied. But in State v. Dahl, 69 Minn. 108, 71 N. W. 910, it was held discretionary with the court whether to grant the writ or not, where the office was filled by appointment and not by election. But neither of those cases necessarily applies to one involving the legal existence of a municipal or quasi municipal corporation.

Corporations of that character can be created only by the state, acting through the legislative department, and are brought into existence for public, and not private, purposes. They derive their franchise from the state, and are created for the better regulation and government of local affairs, and for the enforcement of laws enacted for the general welfare. Conceding for present purposes the right of a private citizen in special cases to institute proceedings to test the right of another to hold an office in such corporation, and for which the applicant for the writ is not a claimant, when he goes further with his application, and seeks to attack the legal existence of the corporation and its right to exercise its public functions, a right derived wholly from the state, he encroaches upon a domain in which his interests are not distinct

from those of the other citizens, and he should not be heard. In such a case the right to institute an inquiry into the legality of the acts of the corporation should be confined to the law officer of the state, the attorney general. Such was the view taken in State v. Tracy, 48 Minn. 497, 51 N. W. 613, and is sustained by the authorities generally. King v. Bond, 2 T. R. 767; State v. Vickers, 51 N. J. L. 180, 17 Atl. 153, 14 Am. St. 675; Ewing v. State, 81 Tex. 172, 16 S. W. 872; State v. Town, 129 Mo. App. 138, 108 S. W. 117; State v. Seymour, 69 N. J. L. 606, 55 Atl. 91; State v. Town Council, 30 Ala. 66; Henry v. Steele, 28 Ark. 455; State v. Village of Kent, 96 Minn. 255, 104 N. W. 948, 1 L. R. A. (N. S.) 826.

We had the question before us recently in State v. McDonald, 101 Minn. 349, 112 N. W. 278, where it was referred to briefly. In that case a similar application was made, but to the district court, to test the validity of the organization of Koochiching county, and we held, conceding, under the rule of the Dahl case, that private suit might be maintained in the discretion of the court, that the district court did not abuse its discretion in denying the right to relator in that case. But we did not intend to be understood as laying down a general rule on the subject by the decision there made, and it is to be noted that the syllabus in that case is somewhat broader than warranted by the opinion. The question ought at this time to be definitely settled and put at rest, and to that end we hold, in harmony with what seems the trend of judicial opinion, that leave to conduct quo warranto proceedings to test the legality of the organization of municipal or quasi municipal corporations will not be granted at the instance of private relators having no interest in the subject-matter distinct from the public. The Dahl case should be limited to facts like those there before the court.

The reasons for the rule which we here apply are well stated by Judge Vanderburgh in the Tracy case, supra. And we may add to what was said in that case that to permit persons, with some special interest to protect, in this manner to question the legality of the organization of cities, villages, or counties of the state would in effect vest in them prerogatives belonging peculiarly to the state, the creative power, and open an unnecessary field of litigation, founded in most instances in selfish motives or disappointed aspirations for public favors.

Again, in this particular case the county challenged has been in existence and exercising the powers conferred upon county organizations for two years. It has fully equipped itself for the discharge of all its functions and has been recognized by the legislature as an existing county organization. By chapter 405, p. 561, Laws 1907, an appropriation was made to it for the purpose of improving roads and highways within its boundaries. It has frequently been held that a recognition of a municipal corporation by legislative act bars the right of the state subsequently to question the sufficiency of the organization. State v. Village of Harris, 102 Minn. 340, 113 N. W. 887, 13 L. R. A. (N. S.) 533; State v. School District, 85 Minn. 230, 88 N. W. 751; State v. Leatherman, 38 Ark. 81; Jameson v. People, 16 Ill. 257, 63 Am. Dec. 304; State v. Town, 116 Mo. 582, 22 S. W. 888. But, whether the state may be absolutely barred or estopped by such legislative recognition or not, the fact of such recognition manifestly ought to preclude the right of private suit. In the case of State v. School District, supra, the state had loaned the school district money, and we held that it could not thereafter, even at the suit of the attorney general, question the legality of the organization of the district. There is probably no distinction in point of substance between a loan of money to such a corporation and an act of the legislature appropriating money to aid in the management of its corporate affairs.

Though the information before us is directed to the board of county commissioners, the purpose of the proceedings is to assail the county organization, and, unless relator has some interest in the matter distinct from the public, he cannot be heard. The fact that he is under indictment by the grand jury of the alleged defectively organized county does not vest in him any distinct or special right within the meaning of the law. His situation is different; but his interest in the question whether the county was legally organized is identical with that of other citizens, varying only in degree. He occupies no better position than a general taxpayer or a legal voter who pays no taxes. It might with equal force be claimed that a nonresident property owner occupies a position different from those residing in the county, or that a legal voter of the county, who owns no property and pays no taxes, has an interest distinct from the voters of the county who do own property and pay taxes.

For the reasons stated, the application of relator is denied.