WILLIAM LACOCK et al., Appellants, v. O. P. MILLER et al., Appellees (and one other case).

SCHOOLS AND SCHOOL DISTRICTS: Consolidation of Districts—
1 Illegality—Procedure. Whether injunction to restrain the officers of a consolidated school district from transacting any business, etc., is the proper remedy to test the legality of the formation of such district, *quaere.*

SCHOOLS AND SCHOOL DISTRICTS: Consolidation of Districts—
2 Illegibility of Election Notices—Effect. Legible notices of an election, posted in good faith and with due care, are not rendered nugatory because of the fact that, prior to the expiration of the period during which the law requires posting, they became illegible.

SCHOOLS AND SCHOOL DISTRICTS: Consolidation of Districts—
3 Size of Remaining Corporations. The prohibition that the size of a school corporation, from which territory is taken to form a consolidated district, shall not be reduced below four governmental sections, applies solely to the size of the *corporation,* not to the size of a sub-district of a school district township. (Section 2794-a, Code Supplemental Supplement, 1915.)

SCHOOLS AND SCHOOL DISTRICTS: Consolidation of Districts—
4 Fixing Limits of District—Review—Procedure. The propriety of the limits of a proposed consolidated school district, duly approved by the county superintendents of two adjoining counties, from which approval no appeal has ever been taken to the superintendent of public instruction, cannot be raised for the first time in a collateral proceeding in the Supreme Court.

*Appeal from Jones District Court.*—MILO P. SMITH, Judge.

SATURDAY, DECEMBER 16, 1916.

THE two cases entitled as above were consolidated and tried in the district court as one, and will be so treated here. They are injunction actions, brought to enjoin the Consolidated School District, its officers and directors, from transacting any business as such, and asking the court to declare all the proceedings relating to the creation, organization and establishment of the district, null and void. The first case

was commenced by Lacock and Peet, as taxpayers and residents of the consolidated district, to have all the proceedings declared invalid, and to enjoin the officers of the district from levying or certifying any taxes against their property for school purposes. The action was also said to be for and on behalf of all taxpayers similarly situated. The defendants to that action appeared and answered, denying the allegations of the petition.

The second action was also brought by a resident taxpayer, against the consolidated district, as such, and the officers and directors thereof, asking that the so-called consolidated district be dissolved; that the election of the directors and officers be declared void; and that they be enjoined from transacting any business as such; also that they be enjoined from levying taxes, issuing bonds, or certifying taxes. The defendants to that action also answered the petition, and set out *in extenso* all the proceedings relating to the establishment of the district, claiming that they were all regular, and in strict accord with the law. In that action, Lacock and Peet intervened, setting forth in their petition practically all the matters pleaded in their original petition in their main case, and also alleging that Newman's action was not in good faith, but a friendly suit brought for the purpose of having an adjudication, establishing the validity of the consolidated district. In their prayer, they asked substantially the same relief as in their original petition. Issue having been tendered, the two actions were consolidated and tried as one, resulting in a decree finding that the consolidated district had been duly and legally established, and dismissing plaintiff's petition in the original case, and the petition of intervention. Lacock and Peet appeal.—*Affirmed.*

*E. A. Johnson* and *Clifford B. Paul,* for appellants.

*Remley & Remley, B. E. Rhinehart* and *Herrick & Reed,* for appellees.

DEEMER, J.—I.  No question is made regarding the form of these actions, and we shall, for the purposes of the case, treat them as proper ones whereby to test the validity of the

1. SCHOOLS AND SCHOOL DISTRICTS: consolidation of districts: illegality: procedure. organization of the consolidated school district, without in any manner intimating that injunction is the proper remedy. The validity of the proceedings creating and establishing the district is challenged on several grounds.  The first is that proper notices of the election were not published as required by law; the second, that the territory comprised therein was not properly included, or, rather, that territory outside of the district was not left in a situation which the law requires; and the third, that property on the boundaries of the district was unlawfully divided, so that some of it was in the consolidated district, and part of it in contiguous districts, townships or independent districts, and so subdivided that plaintiffs will have to pay taxes to the new consolidated district, but could not send their children to the school in the new district, their residences being outside the consolidated one.

The claimed defect in the notices has no reference to the substance or form thereof; but to the fact that they were typewritten, and some of them became illegible soon after they were posted.  The statute provides that not less than 10 days' notice (of the election) be posted, in at least 5 public places.  Code, Section 2746.  As a matter of fact, the secretary of the board, on March 27, 1915, posted 8 notices: one at the post office in the town of Martelle, another on the town hall in said town, another on the door of the Hopewell schoolhouse, one on the schoolhouse in the Cherry Grove district, one on the Cottage Hill schoolhouse, one at District No. 6, Fairview Township, one on the Dumont school, another on the schoolhouse in School District No. 5, and another he kept, and upon this, he made his return.  Two of these notices were posted in territory outside the proposed consolidated district.  It is claimed that all were distinctly leg-

ible when posted; but testimony was introduced tending to show that the notices posted on the Hopewell schoolhouse and the town hall at Martelle, both within the proposed new district, faded by the action of the elements, so that, within a few days, they could not be read.

Testimony was also adduced, to the effect that the one posted on the Dumont schoolhouse, within the district, could not be read the next day after it was posted. It is claimed that this amounted to no posting at all, of 3 of the 8 notices; and, as two of them were outside of the proposed district, the necessary number of postings was not made; and that all subsequent proceedings are void.

As already stated, these notices were all written on a typewriter, and it appears that three of them were original, or ribbon copies, and the others were carbon copies; and it is conceded that one of the original ones was used for making the return. There is no claim that the notices were not legible when first posted, or that the secretary was guilty of any negligence or want of care in preparing or posting the notices, save as this may be inferred from the fact that three of them became illegible a few days after they were posted. This, in itself, does not prove negligence or want of care, and there is no suggestion of any purpose of the secretary to mislead the public, or to use a machine ribbon or carbon which would or might fade in a short time after being exposed to the elements.

While there is some conflict in the testimony, it does establish that some of these notices faded after being posted, so that, on the day of election, some of them were difficult to decipher, and could not be read, unless the reader knew something of their purport. Those which seemed to have faded the most were the ones on the town hall door in Martelle, and the one on the Dumont schoolhouse. There was another in the town of Martelle which no one challenges. The one on the Dumont schoolhouse is chal-

2. SCHOOLS AND SCHOOL DISTRICTS: consolidation of districts: illegibility of election notices: effect.

lenged, but that, it seems, could be read by one who had any knowledge of its purpose. 'The secretary of the board testified that the notices were clear and distinct when posted, and that the carbon copies were just as good as the originals. The concrete question presented by this record is this: Must posted notices be such as that they will withstand the action of the elements, or must the officer whose duty it is to post these notices, see to it that they remain legible during the entire period for which they are required to be posted? There is no claim of any fraud or collusion, or of any design on the part of the official or officials having the matter in charge, to post notices which would easily fade or soon become obliterated; so the effect of such purpose is out of the case.

Appellants claim that, to meet the requirements of the law, the notices must remain legible during the entire period for which they must be posted, and if, for any reason, they become faded so that they cannot be easily read, there is no posting. Such is not the law, as we understand it. Of course, the officers must exercise some care in the matter; but they are not held to insure the continued legibility of the notices as posted. The adoption of such a rule would mean that, if the notices, as posted, were destroyed by a storm, or removed by a third person without the knowledge of any of the officers of the school district, proper care being used in the first instance, still the notices are ineffective, and all proceedings based thereon are void. Neither logic nor the law requires any such holding. Indeed, the cases generally announce the rule that, if proper notices are posted in the first instance, it is not necessary to prove that they remain posted each and every day thereafter. *People v. Lodi High School District,* 57 Pac. 660 (124 Cal. 694). In 29 Cyc. 1122, the following rule is announced:

"The fact that a portion of an advertisement was blurred, or otherwise illegible, does not operate to vitiate the publication, where due proof of publication as required by law is made."

*Thompson v. Higginbotham,* 18 Kans. 42, supports this rule. There were no such defects in the posting of the notices as to defeat the proceedings.

II. The claim that some of the territory remaining after carving out the new consolidated district, did not contain four sections of land, as required by Section 2794-a, Supple- mental Supplement to the Code, 1915, is met in two ways: (1) The last nine lines of Subd. a of that section of the Supplemental Supplement were not in force when the district in question was formed. That part of the section was added after the vote was taken for the establishment of the new district. (2) That part of the section in force when the rights of the parties hereto became vested, refers to the number of acres that are left in a district township, and not the number remaining in a subdistrict thereof. See *Consolidated Ind. School District v. Martin,* 170 Iowa 262.

*3. SCHOOLS AND SCHOOL DISTRICTS : consolidation of districts : size of remaining corporations.*

Aside from this, while the testimony is in some confusion, we are constrained to believe that all of the subdistrict known as "Hopewell," was included in the new district. The claim at this point is that part of the land in this Hopewell subdistrict was not included. We think that the whole of it was, and this finding eliminates this entire proposition from the case.

III. The contention that the new district was so organized as to include within it part of the lands of several parties, so as to render them taxable for school purposes, at the same time leaving outside the district other parts of the same tracts, so that the owner could not avail himself of school privileges, does not seem to have been made an issue by the pleadings, and is not supported by any proof whatever, save something said on the cross- examination of one of defendants as a witness. This, in itself, is a sufficient answer to appellants' third proposition. Aside from this, the boundaries of the new district were

*4. SCHOOLS AND SCHOOL DISTRICTS : consolidation of districts : fixing limits of district : review : procedure.*

approved by the county superintendents of the two counties in which the new consolidated district lies, and no appeal was ever taken from their approval. The remedy in such cases is by appeal to the state superintendent of public instruction. See *School Corporation v. Independent School District*, 162 Iowa 257; *School District Twp. v. Independent School District*, 149 Iowa 480.

It should also be stated that there were not to exceed 140 electors in the new consolidated district, and that 114 of them appeared in response to the notices, and voted at the election. Lacock and Peet, the plaintiffs and interveners herein, were both present and voted. It also appears that, at the election of officers, which immediately followed, Lacock was a candidate for the office of director, and that he was present and voted. It further appears that, at an election held in June of the same year, both Lacock and Peet were present and voted.

These facts are recited, not for the purpose of showing an estoppel, for none was pleaded by defendants, but to demonstrate that the equities are not with the plaintiffs and interveners.

On the whole record, we conclude that the judgments and decrees entered herein were each correct, and they are each—*Affirmed.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.