STATE EX REL. ROBERT J. WELLS v. HAROLD R. ATWOOD.[1]

January 28, 1938.

No. 31,425.

*Monte Appel* and *Charles T. Whitacre,* for relator.
*George H. Lommen,* for respondent.

[1]Reported in 277 N. W. 357.

HOLT, JUSTICE.

An information in the nature of *quo warranto* to test the right of respondent to the office of railroad and warehouse commissioner was filed in this court. Without moving to quash, respondent answered. These are the admitted facts: At the general election in November, 1932, Knud Wefald was elected to the office of railroad and warehouse commissioner for the term expiring on the first Monday in January, 1939. He qualified and served as such until October 25, 1936, when he died. At the general election held November 3, 1936, the official ballots provided no space or place to vote for any candidate to fill the vacancy caused by Wefald's death; but 161 "stickers" were found upon the official ballots for state officers purporting to be cast for "Railroad and Warehouse Commissioner for the term beginning November 3, 1936, and ending January 2, 1939." Of these sticker votes so cast, 87 were for relator, 72 for Adolph Larson, and two for Andrew Madson. The state canvassing board, being of the opinion that sufficient time had not intervened between the death of Wefald and the general election of November 3, 1936, to enable the calling of a special election for the purpose of filling the vacancy, therefore concluded that there was no election held for that vacancy at the election canvassed. No certificate of election was issued by the board to relator. He took no step by way of contest. November 13, 1936, the governor appointed respondent to the vacancy created by Wefald's death. Respondent qualified and has since occupied the office.

Relator's contention is that he was duly elected as Wefald's successor, hence respondent is a usurper of the office. The argument is that 1 Mason Minn. St. 1927, § 4629 (relating to the railroad and warehouse commission), provides specially for the filling of vacancies in the commission. It reads:

"Vacancies in the commission shall be filled by the governor until the next general election, when a commissioner shall be elected for the unexpired term."

In view of our elaborate and detailed enactments relating to both special and general elections, the nominations of candidates at

primaries for the general election, the filing by petition of candidates, and the preparing and publishing of the official ballot by the secretary of state showing the offices for which votes may be cast, it is entirely clear that a reasonable time must elapse between the vacancy and the election at which the vacancy may be filled. In this instance it was only eight days—a time wholly insufficient to give the electors in all the election districts notice, to say nothing of having ballots furnished for the occasion, or having that publicity of candidates which an election contemplates. In relation to a judicial office, the constitution (art. 6, § 10) provides that in case of vacancy the successor shall be elected at the first annual election "that occurs more than thirty days after the vacancy shall have happened." And we have 2 Mason Minn. St. 1927, c. 47, relating to resignations, vacancies, and removals of public elective officers, containing this provision (§ 6957):

"Unless otherwise provided for, when a vacancy in an elective office is authorized to be filled by appointment, such appointment shall continue until the next general election occurring after there is sufficient time to give the notice prescribed by law, and until a successor is elected and qualified."

It is clear to us that § 6957 must apply to and govern the meaning of "next general election" in § 4629. If stickers placed upon official ballots having no room or place provided for casting a vote for such office may fill a vacancy that happened eight days previous to a general election, § 4629 must also apply to a vacancy occurring one day or one hour prior to the day of a general election. Such an interpretation of the statute would be absurd and render our comprehensive election statutes a farce. The mere fact that a person having only 87 votes out of a total of about a million cast at an election contends that he is lawfully elected is enough to show the utter absurdity thereof.

The proceeding should not be entertained by this court for another reason. While this court has original jurisdiction to issue writs of *quo warranto*, 5 Dunnell, Minn. Dig. (2 ed. & Supp. 1934) § 8069, states: "The constitution and the statutes recognize that

such proceedings should ordinarily be brought in the district court." The attorney general, the chief law officer of the state, has a wide discretion as to whether to proceed in the district court or in this court. A private citizen has no right, except under extraordinary circumstances, to the use of *quo warranto* in any court to test the title of an incumbent of a public office. Relator, though claiming to have been elected to the office occupied by respondent, concedes that the state canvassing board of the November 3, 1936, general election withheld from relator the usual certificate of election which the law requires the board to issue to the persons who have been elected at such election.

"In general a private person, having no interest in the matter distinct from the general public, will not be allowed to file an information, without the consent of the attorney general, to test the right of an incumbent of a public office to hold the same." 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934, 1937) § 8070.

Among the cases cited in support of the text is State ex rel. Dowdall v. Dahl, 69 Minn. 108, 71 N. W. 910. See also State ex rel. Christianson v. Johnson, 201 Minn. 219, 275 N. W. 684. On the facts appearing from the information filed and the answer thereto, relator is not in the position of one elected to the office held by respondent. He was not nominated at the primary, or by any party, or by petition as a candidate for the election held November 3, 1936. On the official ballots furnished the million voters at said election there was no place to vote for a successor to Knud Wefald, and the mere fact that by "stickers" 87 voters irregularly voted for relator for railroad and warehouse commissioner does not furnish any evidence whatever of relator being elected. He must be regarded as a private individual questioning respondent's right to the office of which he is the incumbent. This may not be done.

The proceeding is quashed.